IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
UNITED STATES OF AMERICA       :         3:10 CR 148 (EBB)
:
v.                             :
:
JAQUAN LEGGETT                 :         DATE: JANUARY 5, 2011
:
---------------------------------------------------------x

RULING ON DEFENDANT'S MOTION TO MODIFY ORDER OF PRETRIAL DETENTION

On September 15, 2010, this defendant was charged in Count 41 of a fifty-six count Superseding Indictment (Dkt. #32), charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(a) and 924(a)(2). As the Assistant United States Attorney ["AUSA"] indicated at defendant's initial appearance on October 7, 2010 (Dkt. #213), if convicted, defendant faces a maximum period of incarceration of ten years. That same day, the Government's Motion for Pretrial Detention was granted without prejudice, as defendant was in state custody. (Dkts. ##216, 231). Jury selection is now scheduled for April 12, 2011, with trial to commence one week later. (Dkts. ##302, 304).

On December 22, 2010, defendant filed the pending Motion for Release from Custody (Dkt. #333), the hearing for which was held on January 4, 2011. (Dkt. #335). At the hearing, defense counsel proffered that defendant is twenty-two years old, has "significant ties" to Connecticut, and potentially could be released in state court on related charges on a $700,000 bond. Present in court to show their support for defendant was his mother, fiancée, sister and a family friend. Defense counsel represented that he conferred with the State's Attorney handling defendant's state charges, and it was defense counsel's "impression" that the state charges would be nolled, if defendant is acquitted of these federal charges or enters a guilty plea to them. While defense counsel acknowledged that defendant has "several

charges in his background," he emphasized that there are no charges for failure to appear. Because he and his fiancée are expecting a baby shortly, defense counsel argued that defendant has even "more of an interest in staying" in this area. In his motion, defense counsel suggests that defendant be released on a non-surety bond, cosigned by his mother, sister, fiancée, and family friend, all of whom are employed; that defendant reside with one of them; and that defendant be subject to home confinement and/or electronic monitoring.

The AUSA responded that as part of its wiretap of a street gang, "The Ave" in Hartford, this defendant was intercepted several times in conversations with codefendant Rome Adams, starting on July 10, 2010, regarding defendant's purchase of marijuana from Adams and consumption of it together. The AUSA further proffered that starting on July 26, 2010, defendant was intercepted in several telephone calls with codefendant Adams regarding defendant's protection of the gang's firearms at defendant's residence on Adams Street in Hartford; both defendants expressed concern about the Hartford Police Department's increased presence in the neighborhood, amid fears of potential violence there. Upon information provided by a cooperating witness, three days later, on July 29, 2010, the Hartford Police Department and the DEA executed a search warrant at the Adams Street residence, where they seized ten to eleven firearms. Defendant's state charges concern possession of revolvers. The AUSA similarly spoke with the state prosecutor, who agreed to postpone court proceedings one more time, with the expectation that these charges may be nolled in February. As previously indicated, defendant already was in state custody on these charges when he was arrested on these federal charges.

The AUSA emphasized that "despite" defendant's young age, he has a "significant criminal history." As the AUSA summarized, and as is detailed in the Pretrial Service Report prepared by the U.S. Probation Office ["USPO"], defendant had two convictions in May 2006

2

for sale of narcotics, for which he was put on three years' probation. A little more than three months later, defendant was arrested in early September 2006 for alteration of a firearm ID and carrying a pistol without a permit; the police report indicates that while defendant was fleeing from the police, he dropped his weapons. He was convicted on these state charges in June 2007 and was sentenced to forty-four months in prison, a sentence that the AUSA described as "significant" in the Hartford Superior Court; his two prior probations were terminated at the same time. Thereafter, he was placed on parole in late June 2009, and twice was remanded to state custody for technical violations of his parole. While defendant was in DOC custody, he was cited on twelve occasions for disciplinary infractions, including fighting, security tampering, interfering with safety and security, and disobeying a direct order, for which he received thirty-four days in punitive segregation. Defendant was discharged from state custody on May 7, 2010, and eighty-three days later, was arrested on July 29, 2010, and was intercepted in telephone conversations as early as July 10, 2010. The AUSA argued that this record suggests defendant's "inability to conform his conduct to the laws of our community and to court supervision." The AUSA further argued that it would be "completely inappropriate" to return defendant to the Adams Street residence.

USPO recommended that defendant be detained as a danger to the community.

The Government moved for detention both on the basis of risk of flight and danger to the community. With respect to the first ground, the Second Circuit has established a two-tier test:

> First, the court must make a finding as to whether the defendant presents a risk of flight if not detained . . . .
>
> Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released. The burden of proof is on the government to prove the absence of such conditions by a preponderance

3

of the evidence.

United States v. Shakur, 817 F.2d 189, 194-95 (2d Cir.)(citations omitted), cert. denied, 484 U.S. 840 (1987).

As stated in open court, the Government has sustained both its burdens here. Although defendant has a supportive family all located in this area, if convicted, he faces significant exposure, far greater than what he faced in state court, which is a strong incentive to flee.

Were it not for defendant's extensive and troubling criminal record, some elements of the bond package suggested by defense counsel might be appropriate, as the proffered cosigners are all employed. However, as the AUSA has appropriately observed, the proposed bond package would return defendant to the same location as prior to his state arrest, from which ten to eleven firearms were seized. Defendant had six convictions between the ages of seventeen and eighteen years; he was arrested on the state firearms charges just three months after placed on probation for the state narcotics charges. While he was in state custody, he was disciplined twelve times, for fairly serious charges, receiving thirty-four days of punitive segregation. He was remanded back to state custody twice while on parole for technical violations. When he finally was discharged from state custody on May 7, 2010, two months later he was intercepted on the federal wiretap, on July 10, 2010, and was arrested on state weapons charges on July 29, 2010. As the AUSA appropriately argued, this is a track record that strongly indicates an inability to follow supervision.

Therefore, defendant's Motion for Release from Custody (Dkt. #333) is denied. However, as indicated at the conclusion of the detention hearing, defense counsel is free to consult further with the USPO with respect to any alternative bond package, which must

include a third-party custody with a proven ability to control this defendant.[1]  **If a written Motion for Reconsideration is filed, a courtesy copy must be provided to this Magistrate Judges's Chambers.**

Dated at New Haven, Connecticut, this 5th day of January, 2011.

SO ORDERED.

/s/  Joan G. Margolis, USMJ_____
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE

---

[1] In light of this conclusion, there is no need to address the issue of danger to the community.